# In the District Court of the United States
## For the District of Columbia

| | | |
|---|---|---|
| Michael Ellis, | § | |
| Plaintiff | § | |
| | § | |
| V. | § | District Cause No. 1:14-CV-00471 |
| | § | |
| Commissioner , Internal Revenue | § | |
| & United States Attorney General, | § | |
| Defendants | § | |

## First Amended Complaint

### Preliminary Statement

1.  Plaintiff has discovered that in cases involving those the Internal Revenue Service labels "income tax non-filers", IRS circumvents
    - a.) the exercise by a citizen of their protected 5th Amendment right,
    - b.) IRS' lack of authority to perform substitute *income tax* returns, and
    - c.) the restrictions written into the IMF software,

    by triggering the "Automated Substitute for Return" (ASFR) record falsification scheme.

2.  Employees of IRS enter false information in one part of the Defendant IRS' computer system to induce the appearance a substitute for return was executed. Taking advantage of compartmentalization of the agency, which makes it impossible for employees to view more than the small step assigned to each, the system is repeatedly abused in manners for which it was not intended, while employees assume their work is lawful.

3.  But certain IRS attorneys and technicians of IRS' computer system of records know it is being abused to defraud individual victims and U.S. courts. Further, attorneys of the Defendant Attorney General knowingly use records falsified by the IRS scheme (in violation of 18 USC §1001),[1] take deliberate steps to conceal the IRS scheme (in violation

---

1. The DoJ's 2012 Criminal Tax Manual, Section 40.03[9][c] discusses IRS Certificates in the context of hearings: "Admissibility of IRS Computer Records. The introduction of the actual Individual Master File (IMF) transcript of account through a witness can open the witness to cross-examination by the defense about every code and piece of information contained in the transcript. **In order to avoid this problem, it may be wiser to simply offer IRS computer records at trial in the form of Certificates of Assessments and Payments, certified documents reflecting tax information kept on file at the IRS.**" [Emphasis added.] Why is it "wiser", and why is that phrase used only once in the entire Manual. This deliberately improper advice to U. S. Attorneys, in conjunction with a recent filing by the Attorney General's employees in Plaintiff's now-withdrawn appeal, confirms the DoJ is compromised and complicit in the scheme, as shown below.

RECEIVED
Mail Room

APR 1 2014

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbi;

of 18 USC§4), and are involved in a conspiracy against rights (in violation of 18 USC §241), while the DoJ secures convictions in 97% of "willful-failure-to-file" cases using falsified records.

4.      The scheme is renewed annually in Plaintiff's case after the Defendant Commissioner demands Plaintiff voluntarily waive his right protected by the Fifth Amendment to not be compelled to provide sworn evidence on a "1040" "income tax" return form.  Should Plaintiff not comply with the demand, IRS responds by first presuming, pursuant to an unlawful and illogical Treasury Regulation, that Plaintiff supposedly filed a return showing a zero amount due, (0.00).  Then, the fraudulent presumption is memorialized in the Individual Master File (IMF) record assigned to Plaintiff.

5.      But IRS must improperly use a procedure designed to process requests by "taxpayers" to IRS to compute returns for them pursuant to 26 USC §6014, which procedure begins in an ancillary database known as the Audit Information Management System (AIMS) and requires the use of a push code to bypass the IMF safeguards. The procedure results in the opening of a fresh IMF module/record each tax year, falsely reflecting that IRS supposedly performed a "Substitute For Return" (SFR) on a specified "Return Received Date" at *the supposed request of Plaintiff* pursuant to §6014 despite the facts **he made no such request, nor was an SFR performed on the date claimed**.  IRS then uses the AIMS to overwrite and conceal the source of the module opening procedure between AIMS and the IMF.

6.      IRS conceals the initial fraudulent presumption and database/software manipulations by creating layered, false paper certifications for use in court by United States Attorneys, who are instructed in §40.03 of the Criminal Tax Manual to prevent IRS experts from being cross-examined concerning the IMF fraud by using "self-authenticating" certifications. (See Footnote 1.)

7.      IRS Collections staff used documents created pursuant to the layered fraud scheme to damage Plaintiff.  Moreover, since Plaintiff will never waive his rights protected by the Fifth Amendment, it can reasonably be inferred IRS will continue circumventing Plaintiff's exercise of his protected Fifth Amendment right by resort to the scheme.

**Jurisdiction and Venue of the Court**

8.      Jurisdiction and venue of the Court is based on 28 USC §§1651 and 1331, 5 USC §552(e)(5), 552(g)(1)(C), 552(g)(1)(D), 552(g)(5) and the Court's equitable power.

**Parties**

9.      Plaintiff Michael Ellis is a United States citizen.  The Commissioner of IRS heads the agency responsible for enforcing federal tax law and procedures. The United States Attorney General heads the Department responsible for ensuring justice is done in United States courts.

**No other Remedy, extraordinary Circumstances**

10.   Plaintiff alleges he is the victim of government-sponsored criminal activity caused by the Defendants' deliberate creation and use of falsified records with respect to him, since the acts of which complaint is made constitute unarguable violations of 18 USC §1001, 18 USC §4, and 18 USC §241. His explicit allegations: that IRS falsified its records pursuant to the ASFR scheme to defraud Plaintiff, that IRS is currently using the ASFR record scheme to attack Plaintiff, that IRS will likely continue to use the scheme if not enjoined, (and that by using the scheme IRS defrauds courts of the United States with the assistance of the complicit Department of Justice), presents absolutely extraordinary circumstances.

11.   No other avenue exists to accomplish the three primary goals of this suit: to compel the Commissioner to (A.) cease making unlawful presumptions in 1040 income tax cases pursuant to any regulation, including Treas. Reg. §301.6211-1(a), to (B.) cease falsifying IRS internal records/certifications, and to compel IRS and the DoJ C.) to cease <u>using</u> falsified records to damage victims.   Hence resort to equitable remedy is appropriate.

## Standing

12.   The scheme to falsify IMF records (or IMF's successor system "Customer Account Data Engine", ("CADE 2")) and certifications in regard to Plaintiff is an ongoing violation of both his protected right to due process of law and the Freedom of Information Act, (FOIA). In 2011 IRS Revenue Officer "Kenny Justice" caused injury to Plaintiff by issuing and collecting on liens and levies based on the record falsification scheme of which complaint is made.   In Dec. 2013 IRS Revenue Officer "Christopher Fletcher" caused further injury to Plaintiff and his reputation, using records falsified pursuant to the scheme to justify filing liens.  And on Feb. 11th and 12th of 2014, Mr. Fletcher intimated he would continue using records (that have been falsified concerning 2009 and 2010).

13.   Since (a.) Plaintiff will never voluntarily waive any right secured to him by the Constitution of the United States, including his right protected by the Fifth Amendment to not be compelled to provide the government evidence which may be used against him, since (b.) IRS has invariably responded in the past to Plaintiff's refusal to waive that right by triggering the ASFR scheme of which complaint is made, and since (c.) IRS is continuing to use the scheme in its ongoing attempt to damage Plaintiff, equitable relief is warranted.

14.   Plaintiff has been damaged by the following **acts** by IRS, and so has standing to seek an injunction to enjoin the Commissioner from (A.) ever committing **the act** of unlawfully presuming pursuant to any regulation, including the void section of Treasury Regulation §301.6211-1(a), that in cases involving the income tax, a return was filed showing a 'zero amount' due; from (B.) ever committing **the criminal act** of falsifying any record or **system of records** which might reasonably be, or become, associated with Plaintiff, whether labeled "IMF", "BMF", "NMF", "CADE 2", "6020(b) Certificate", "4340 Certificate", or any other label, and from (C.) ever committing (either in conjunction with, or apart from the complicit DoJ) **the criminal act of deliberately "using"** any falsified **system of records** which might be or ever become related to Plaintiff. Such relief would prevent repetition of the damage already suffered and provide Plaintiff powerful redress.

15.    It should be noted Plaintiff is not seeking limited relief, such as to amend falsified IRS records assigned to him. Instead, since Plaintiff was damaged by the three underlying core acts which compose the scheme, he has standing to seek the full, complete relief of terminating the perpetration by the Commissioner and DoJ of *the underlying acts themselves*, which would permanently mitigate their effects.

16.    Finally, it should also be noted Plaintiff is not seeking to affect, change or prevent any IRS collection or assessment activity, but seeks only to terminate the commission of criminal, unlawful acts of which complaint is made and for which no authorization can ever exist. **Unarguably IRS can fully operate its tax assessment and collection functions without resort to criminal, unlawful acts**. Criminal schemes by the Defendant Government agencies and employees to defraud both District Courts of the United States and individuals alike cannot under any pretext be shielded from review by the courts.[2]

**Statement of Facts**

17.    Upon information and belief, Plaintiff alleges the IRS uses a scheme to bypass his exercise of the right secured to him by the Fifth Amendment, which protects him from being compelled to provide the Government evidence which might be used against him, such as a sworn "1040". [The scheme is annually repeated by IRS each year separately, although it will be described in detail with respect to 2007 only.]   The Department of Justice is fully aware of and complicit in the scheme, uses tainted documentation produced by the scheme, conceals the scheme and profits from it, as shown below.

18.    The Secretary has issued no Treasury Delegation Order *expressly* authorizing the Commissioner to execute substitutes for income tax returns in cases involving "non-filers".

19.    The only Treasury Delegation Order (TDO 182 now Delegation Order 5-2, dated Sept. 19, 2012) authorizing IRS personnel to prepare, sign and execute a return "when no return [is] secured" from a "non-filer" is fully described in Internal Regulation Manual[3] (IRM) Section 5.1.11.6.7 (03-13-2013) IRC 6020(b) Authority, which does not mention the individual income tax Form 1040, nor any variant thereof.   [Link here: **http://www.irs.gov.irm/part5/irm_05-001-011r-cont01.html**] §5.1.11.6.7 infers the authority is limited to the context of employment, excise and partnership taxes.

---

[2]  "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.... The public welfare demands that the agencies of public justice be not so impotent that they always be mute and helpless victims of deception and fraud." *Hazel-Atlas Glass Co. v Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

[3]  The Internal Revenue Manual sets forth the policies, procedures, instructions, guidelines and delegations of authority which control the operation and administration of the Internal Revenue Service. It consists of thousands of pages describing the minutiae involved in the day to day workings of the IRS. Revenue Agents, Revenue Officers, Appeals Officers and Special Agents of the IRS Criminal Division all refer to it as their "bible". Unfortunately, IRS and DoJ employees apparently ignore what is written.

20.  The limitation of authority to perform/execute substitute returns to cases involving employment, excise and partnership taxes, is precisely confirmed in both IRS' Revenue Officers Training Manual and IRS "Privacy Impact Assessment" of the "6020(b) non-filer program". [Link here: **http://www.irs.gov/pub/irs-pia/auto_6020b-pia.pdf** ]

21.  IRS has never published any IRM section explicitly authorizing execution of substitute returns *in 1040 income tax cases* involving non-filers.

22.  The scheme commences with IRS' presumption, created in Treasury Regulation §301.6211-1(a), that in cases where "no return is made", that "the amount shown as the tax by the taxpayer upon the [imaginary] return" "shall be considered as zero". The presumption exceeds the scope of 26 USC §6211 which makes no mention of instances "where no return is made". [4]   [Hence, §301.6211-1(a) is void in that regard, as is any other similar Treasury Regulation, and does not authorize such presumption.]

23.  IRS' Individual Master File (IMF) [5] software system of records has stringent built-in safeguards to protect citizens. Changes are made in the IMF databases using three digit coded transaction numbers to represent the changes. These "transaction codes" are described and documented in the "IRS Processing Codes and Information Manual", a.k.a. the "6209 Manual".

24.  Building on the unlawful presumptions of §301.6211 that a zero return (0.00) was filed by a victim, IRS uses the IMF adjunct database known as the "Audit Information Management System" (AIMS)[6] to memorialize that "fact" in the IMF while bypassing the IMF system safeguards.

---

[4]  IRS unarguably does have authority to **amend/change** any and every return submitted, in cases when an incorrect entry is made on a submitted return by the filer. However, when no 1040 is filed, the ASFR record falsification program is triggered by this regulation resulting in the appearance in the computer sytem that a return was filed which IRS is authorized by statute to amend. This record-falsification enables IRS to bypass the software protections built into the IMF system, (or successor systems such as "CADE 2"), which systems require either a return submitted by a filer, or a substitute created upon the request of a person, to justify opening every tax year a "module" in the IMF system.

[5] "Individual Master File" or "IMF" records are kept by IRS concerning individuals and other entities. One of the uses of the IMF is to direct the enforcement activities of the Commissioner's delegates, who take actions against persons pursuant to that record. (See 1996 Internal Revenue Manual MT 3000-353, pg. 30(55)0-4 Section 2, "Concept of Individual Master File".) Thus, the IMF must be **absolutely accurate**.

[6] IRS' AIMS database is an adjunct computer workspace related to the IMF software wherein "Examinations" staff creates/holds/memorializes working records concerning IMF accounts. The AIMS database does not have the extensive protections written into the IMF software, which only allows specific entries known as 'transactions'. Each type of approved transaction has a unique "transaction number" assigned to it. The Commissioner's "AIMS Reference Guide" provides the proof of the precise transaction number ("424") and Push Code ("036") he uses to fraudulently cause the orphan 150 transaction, with an amount due of "0.00", labeled "SFR", etc., to appear in an IMF module.

25.    AIMS does not have the same restrictive protections as those built into the IMF software, and entries made in AIMS can cause changes in the IMF database. The IRS record-falsification scheme uses these two features of AIMS to circumvent the restrictive program parameters of the IMF system.

26.    26 USC §6014 gives IRS authority to compute 1040A returns at the request of taxpayers.

27.    In order to open an IMF "module" each year for those IRS labels "non-filers",[7] IRS improperly uses software procedure created to process §6014 requests by "taxpayers", despite the fact no request is made to IRS by non-filers to compute an amount due.

28.    As a result, particular entries can be made in the AIMS database each year which result in "seating" or opening a new tax year module in the permanent IMF record of non-filers.

29.    Such entries also cause the new module/record to falsely reflect that the individual supposedly requested a 1040**A** return (which is the form IRS can execute upon a taxpayer's request pursuant to §6014) to be prepared by IRS, and that IRS supposedly performed a substitute return on the date of opening the module, despite the fact *no such request is made, nor was any SFR computed* on the date "SFR 150" was inserted via AIMS into the IMF module.

30.    For example, the IMF record assigned to Plaintiff concerning 2007 reveals that on January 13, 2010, by using the procedure created to process §6014 requests, someone in IRS' Collections Division made an entry in IRS' AIMS database and used a certain "Push Code" ("036") to seat a new module for 2007 in the IMF record maintained concerning Plaintiff.

31.    Without use of the push code, the IMF software would automatically reject the "transaction"[8] initiated in AIMS, then "unseat" the IMF module-opening transaction.

---

[7] Plaintiff has never claimed, and will never claim, to be a "non-filer", although he does claim to exercise his constitutionally-protected rights and will never voluntarily waive them. Said differently, the DoJ and Service will have to use IRS' falsified records to back up their claim he is a "non-filer", since Plaintiff himself has made no such claim herein nor anywhere else.

[8] A transaction number is automatically generated for every input into an IMF. But the initial AIMS entry caused a transaction number ("424") to appear in the IMF revealing that an AIMS-initiated transaction was the source of the phrase "SFR 150" in the IMF, (not an actual filed return). A "424" is defined in the 6209 Manual as an "Examination Request Indicator", meaning "a Return was referred to Examinations or Appeals division". Since *no return existed or refer* to Examinations, IRS decided to conceal the "424" transaction from view in the IMF. So IRS initiated a "424R" transaction in AIMS to remove the "424" from appearing in the IMF, but that left behind a telltale "425". A "425" transaction is defined in the 6209 Manual as "a TC 424 which was reversed". But, (fraud upon fraud), nothing in truth was "reversed" because the effects of the 424, including "SFR 150", etc., remained in the IMF. The initial 424 transaction was simply removed from direct view.

32.   The AIMS/IMF inter-database play begun on January 13th, 2010 resulted in FIVE pieces of information entering the 2007 IMF assigned to Plaintiff: a.) the phrase "SFR 150",[9] b.) an "amount due" of "0.00" (memorializing the void presumption created via Treasury Regulation §301.6211) c.) a "RET RCVD DT" (return received date), d.) a unique "document locator number", and e.) certain "transaction code" numbers.

33.   The transaction initiated in AIMS on Jan. 13th, 2010 is identified by IRS in the "Information Processing Codes and Information Manual" (6209) as a "424" transaction.

34.   Despite the fact no "substitute for return" ("SFR") had been prepared and memorialized on the "return received date" given, no return whatsoever existed on the date claimed.

35.   Thereafter, the initial 424 transaction which began in AIMS, was concealed by IRS Collections when it initiated via AIMS a second similar inter-database transaction.

36.   That second transaction concealed in the 2007 IMF module transcript the transaction number "424" of the initial AIMS play, but left behind certain evidence IRS cannot erase.

37.   In brief summary, on January 13, 2010 IRS unlawfully used the software procedure created pursuant to §6014 to open the 2007 module in the IMF record assigned to Plaintiff, which caused the 2007 module to incorrectly reflect that the Service supposedly performed an SFR on a supposed "return received date", and which phantom 1040A return supposedly showed a "0.00" amount due, when nothing whatsoever happened except multiple inter-database transactions.   Then the direct evidence of the initial "424" transaction was overwritten to conceal it.

[IRS used the AIMS database to falsify the highly-secure IMF record concerning Plaintiff for 2007 and almost every other year since 1995.  Plaintiff has evidence from uncountable IMF records of others proving IRS annually similarly falsifies the IMF records of individuals exercising their Fifth Amendment right.  Stopping **the criminal act itself** of falsifying in any manner, including the manner disclosed, any IRS database reasonably associated with Plaintiff is one of the three focal points of this suit.]

38.   Approximately two weeks after January 13, 2010, which was the date when the unknown-unnamed employee of IRS' Collections Division imported the orphan, baseless phrase "SFR 150" via AIMS into the 2007 IMF module which IRS keeps concerning Plaintiff, Collections transferred the case to IRS' Examinations Division, to further the ASFR record falsification scheme.

---

[9]   For the information of the Court, in IRS argot, a transaction numbered "150" in an IMF reflects the filing of a return by a person, but the phrase "SFR 150" means IRS supposedly prepared a "substitute for return".  The IMF software, which has multiple built-in validation checks requires that for any given year a return of some sort must first be completed.  This explains the genesis of the falsification scheme to make it appear that a 150 return was completed, using the AIMS database to enter the baseless but critical phrase "SFR 150" into the IMF.  After the initial fraudulent entry is made, a "tax module" opens for the victim.  Only then will the IMF software allow IRS officials to make 'changes' to the IMF record for any given tax year, or module.

39.  In April, 2010, someone claiming to be "Maureen Green" of IRS' Examination Division completed IRS' **initial** assessment in Plaintiff's case. But "Ms. Green" performed her work on a Form 4549, an "Income Tax Examination Changes" form, which is used pursuant to 26 USC 6651 ("Additions to the tax") by IRS auditors to show the changes/"adjustments" to income made in cases involving employment, excise and partnership taxes.

40.  By using a "Changes" Form 4549 she was ostensibly "changing" something, despite the fact no previous return or assessment existed which she could have "changed".

41.  The only previous amount in the 2007 IMF which she could have been "changing" was the "0.00" "amount due" placeholder interpolated therein by Collections via AIMS and push code 036 on January 13th, 2010, the pretended "Return Received Date" of a presumed (but imaginary) "SFR 150".

42.  Ms. Green appended a "6020(b) Certification"10 thereto, wherein she stated Treasury Delegation Order 182 authorizes her to perform substitute returns, although she carefully refrained from stating or claiming anywhere she had actually performed a **1040 income tax SFR**.

43.  No source of authority referenced in the Internal Revenue Manual explicitly authorizes IRS employees to perform **1040 income tax substitute returns**, unless request is made by a taxpayer, thus IRS employees cannot verify via the IRM or anywhere else the explicit source of authority to execute substitutes for return in *income tax* cases (without request by taxpayers).

44.  Ms. Green unlawfully exceeded her authority by extending the power granted her to perform/execute substitute employment, excise and partnership returns to her computation of substitute *income* tax returns.

45.  Ms. Green's work, although unauthorized, was correctly memorialized in the 2007 IMF assigned to Plaintiff by entrance of a transaction code "300", a.k.a a "TC 300". A TC 300 is defined by IRS as a transaction that indicates an "Additional Tax or Deficiency Assessment" was performed.

46.  A TC 300 cannot be entered into an IMF module unless a TC 150 or SFR 150 is previously entered to open a tax year module.

47.  As noted above (see footnote 10) a transaction code "150" reflects the filing of a return; a transaction code "150" with SFR indicator is supposed to reflect the filing of a substitute for return.

---

10  A properly completed Form 13496, a.k.a an "SFR 6020(b)" is apparently mandatory in cases against a person who supposedly failed to file a 1040 return. In Tax Court cases, the DoJ attorney invariably begins her Pretrial Memorandum for the Court with: "Petitioner X did not file a tax return for the taxable year 2005. Respondent prepared a substitute for return on X's behalf per I.R.C. §6020(b)."

48.  Ms. Green's initial assessment work was not the SFR which opened the 2007 module in the IMF assigned to Plaintiff.  No SFR existed at the time the 2007 module was opened.

49.  Ms. Green's Form "4549 Changes", which she "adopted" as a so-called "substitute for return <u>package</u>" (emphasis added) by appending thereto Forms 13496 ("6020(b)") and Form 866 (Explanation of Items), was completed and memorialized in the IMF record **many weeks** after the phrase "SFR 150" was fraudulently inserted via AIMS and push code 036 into the 2007 module.

50.  Still later, on June 9, 2011, a Ms. "Denise Bradley" created another fraudulent "Certification", (a "Form 4340"), which form (or similar) IRS provides to the DoJ to prevent cross-examination of IRS employees/experts concerning the ASFR scheme should litigation arise, thus facilitating fraudulent convictions. (See Footnote 1.) The certification claims it is an official transcript of the record contained in the IMF.   But Ms. Bradley certified only that the data she provided was on file in IRS records, not that the data was ACCURATE.  It was carefully re-arranged.

51.  Specifically, the Form 4340 Certification created by Ms. Bradley regarding Plaintiff for the year 2007 would mislead any fact finder, since the Form falsely indicates that the January 13, 2010 date when the baseless phrase "SFR 150" was inserted into the IMF by the Collections Division was supposedly the date when an initial 1040 Substitute For Return assessment was performed.

52.  Moreover, neither Ms. Green nor the April 2010 date she unlawfully exceeded the authority granted her are referenced in Bradley's Certification.

53.  By using fraudulent "self-authenticating" certifications such as Ms. Bradley created, IRS and DoJ collaboratively prevent cross-examination of IRS experts regarding the underlying IMF fraud and imaginary SFR's, Ms. Green's unauthorized execution of substitute income tax returns, "changes" made to presumed but phantom "zero" returns, etc., all in violation of 18 USC §§4, 1001 and 241.

54.  After Ms. Green transferred the module/case for 2007 back to IRS Collections Division, (which had initialized the AIMS/IMF ASFR database fraud regarding Plaintiff and 2007), the ASFR record fraud scheme was complete, although opaque and unassailable by its intended victims, (Plaintiff and the courts), ready for Collections' use as basis for issuing colorable, fraudulent liens and levies, and ready for DoJ use should the IRS and DoJ find it opportune in either tax court or a criminal prosecution.

55.  The exculpatory evidence concealed in IRS' IMF records by the scheme is imputed to the knowledge of every DoJ prosecutor in willful-failure-to-file or tax court cases.[11]

---

[11] See *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.1999) "[i]nformation possessed by other branches of the government, including investigating officers (of investigative agencies), is typically imputed to the prosecutors of the case" for *Brady* purposes; *United States v. Jennings*, 960 F.2d 1488, 1490 (9th Cir. 1992) "[t]his personal responsibility cannot be evaded by claiming lack of control over the files ... of other executive branch agencies". Thus, a defendant's due process right to a fair trial is

56. In late 2010 and January 2011, a Mr. "Kenny Justice" of IRS Collections Division used the falsified Certifications issued by Ms. Green as the basis for issuing liens and a so-called levy to the company with which Plaintiff contracted.

57. When Plaintiff queried Mr. Justice concerning IRS' authority to perform 1040 SFR's, Mr. Justice wrote that the Treasury "Delegation Order 1-56" authorized substitute 1040's, and that "Delegation order numbers change".

58. But TDO 1-56 does not mention nor does it authorize SFR 1040's. When confronted with his error, Mr. Justice refused to withdraw his levy.

59. The company then converted to IRS use, without court order, all commissions earned by Plaintiff in 2011, pursuant to the fraudulent lien and levy issued by Mr. Justice.

60. In June 2011, the Company fired him. The school division of the Company with which he had contracted was closed shortly thereafter due to the loss of revenue directly resulting from the fraudulent IRS lien/levy.

61. Plaintiff is unable to find work in his specialized field due to the still-unresolved issues surrounding the IRS' creation and use of falsified records and certifications created pursuant to the ASFR scheme.

62. On Nov. 26, 2013 a Mr. Christopher Fletcher issued the first of numerous correspondences to Plaintiff, some claiming to be "Final Notices". Mr. Fletcher refused to respond to repeated phone calls from Plaintiff, but on Dec. 18th 2013 Mr. Fletcher caused liens to be filed against Plaintiff in Texas.

63. Mr. Fletcher also refused to respond to repeated correspondence from Plaintiff, despite Plaintiff's proffer to Mr. Fletcher of a proposed letter Plaintiff was contemplating sending to the Treasury Inspector General for Tax Administration (TIGTA) concerning Mr. Fletcher's use of falsified IMF records.

64. On January 23, 2014, since Mr. Fletcher did not respond to Plaintiff's correspondence, Plaintiff sent to the Treasury Inspector General the letter concerning Mr. Fletcher.

65. On Feb. 11, 2014 Mr. Fletcher arrived unannounced at the home where Plaintiff and his family lives, threatening Plaintiff's wife that he was going to collect any property Plaintiff owns, based on his use of falsified IMF records.

66. On Feb. 12, 2014, Mr. Fletcher met with Plaintiff in person. Mr. Fletcher truthfully conceded he was basing his work on IMF records concerning Plaintiff for 2009 and 2010, (which had been falsified in the usual manner shown above concerning 2007).

violated when any Government actor, agent or agency withholds material evidence favorable to the defendant, irrespective of any personal knowledge of the prosecuting attorney.

67.     Mr. Fletcher further mentioned his actions were based on purported "substitutes for return", although he truthfully conceded that 26 USC §6020(b) does not apply to income taxes in compliance with the IRS Revenue Officer Training Manual, (but contradicting a host of others including United States Attorney Robert C. Machen, Jr. and Assistant Attorney General Kathryn Keneally, as shown below).

68.     On about March 7th, 2014, a TIGTA investigator placed a call to Plaintiff, conceding the existence of Plaintiff's then-pending appeal before the District of Columbia Circuit, and agreeing that the Courts were the proper forum for resolving the issues concerning the falsified IMF records, imaginary SFR's, etc.

69.     However, no IRS personnel has given any indication IRS would cease using falsified IMF records to damage Plaintiff.  Inference can be made IRS will continue that course.

70.     On March 11, 2014, Assistant Attorney General for the Tax Division Ms. Kathryn Keneally, and United States Attorney for the District of Columbia Mr. Robert C. Machen, Jr., with their subordinates, filed a brief in the Court of Appeals for the District of Columbia Circuit in regard to Plaintiff's then-pending appeal.

71.     In their Brief, the Attorney General's staff gave this Court the benefit of his opinion concerning IRS' ASFR IMF record falsification scheme, but showed not a scintilla of outrage regarding the scheme.

72.     The United States Attorney General and his staff were aware of the IRS ASFR IMF record fraud scheme previous to the filing of Plaintiff's case.

73.     DoJ attorneys have knowingly "used" IRS' falsified records, in violation of 18 USC §1001.

74.     DoJ attorneys have committed deliberate acts to conceal the scheme, in violation of 18 USC §4.  (See Footnote 1.)

75.     The DoJ is participating in a conspiracy with IRS against those exercising their right protected by the Fifth Amendment, in violation of 18 USC §241.[12]

76.     DoJ attorneys profit from the IRS record falsification scheme, securing convictions in 97% of "willful failure to file" cases using self-authenticating certifications which they know or should have known contain deliberately false data, to conceal from victims and courts the underlying fraud in IMF records. (See Footnote 1.)

77.     In its Brief the Attorney General's staff provided false and misleading information to the U.S. Court of Appeals.

78.     For example, in the teeth of Plaintiff's explicit allegations that IRS annually unlawfully opens modules in master file records of "non-filers" by manipulating the AIMS and IMF databases, when no return is filed by either IRS or a victim, the Attorney General falsely

---

[12] Those involved will tacitly or overtly invite this Court to join.  Special Counsel must be appointed.

states: "An IRS master file (IMF) is opened by the filing of a tax return." (Brief, pg. 5, pgh.1)

79.    For another example, while contradicting §5.1.11.6.7 of the Internal Revenue Manual (IRM), contradicting relevant sections of the Revenue Officer Training Manual, and contradicting IRS "Automated 6020(b) Privacy Impact Assessment", (PIA), all of which uniformly infer or state that authority to create substitutes for return extends only to employment, excise and partnership taxes, the Attorney General's staff deceitfully states that §6020(b)(1) provides authority to execute substitute *income* tax returns. (Brief, pg. 5, pgh.1)

80.    The Attorney General knows or should have known that no TDO explicitly delegates from the Secretary to the Commissioner authority to execute substitute *1040 income* tax returns, and that the relevant sections of the IRM, the Revenue Officer's Training Manual, and the 6020(b) PIA directly contradict his claim that §6020(b) authorizes substitutes for *income* tax returns.

81.    For another example, the Attorney General's staff claimed in their Brief that when a person supposedly fails to make a required return, "In such cases, the master file is opened by the entry SFR, meaning Substitute for Return". (See Brief, pg. 5, pgh.1) Although the thus concede IRS creates falsified records showing an SFR was supposedly performed (when nothing occurred), that gloss contradicts the truth known to the DoJ that IRS' Master File database cannot be changed directly, let alone by the entry of the letters SFR, since it is amended by "batch entries" to ensure an audit trail, and only after substantial computer checks are run against each proposed entry pursuant to protections written into the IMF software.

82.    The Attorney General's staff and prosecutors moreover know, should have known and are imputed to know in criminal cases that the IMF modules IRS claims involve "non-filers" were opened by inapposite, unauthorized AIMS/IMF database manipulations which result in criminal falsifications to those IMF modules, as explicitly described above.

83.    For another example, the Attorney General's employees falsely claim that the Anti-Injunction Act "precludes any suit to enjoin __any__ activity that is intended to or may culminate in the collection of taxes". (Brief, pg. 16, pgh.2) (Emphasis added)[13]

84.    The Attorney General knows or should have known that by passage of the Anti-Injunction Act Congress did not intend to exempt criminal acts by IRS staff from review by courts, fatuous claims by IRS that criminal acts are necessary antecedents to assessment or collection activities notwithstanding.[14]

---

[13] No cite was provided by the government for that proposition, probably because those which should have been cited do not use the word "any". It is obvious that criminal acts cannot be committed to form the basis for assessment or collection activities.

[14] Furthermore, the Attorney General also knows the Supreme Court created in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1962) an exception to the Anti-Injunction Act's prohibition

**Standing Summary**

85.   The injunctions requested, if granted, will provide tremendous redress and relief from the ongoing violation of Plaintiff's rights.

86.   A ruling terminating the scheme would a.) restore to Plaintiff the ability to resume contracting in the specialized field of work in which he excels, it would b.) clothe him with standing, if it should ever become necessary (although it is **NOT** requested in this case) to eliminate fraudulent liens imposed pursuant to the scheme, and it would c.) justify to the world the enormous cost he has paid to end IRS' virtually inconceivable record fraud scheme.

87.   Ending the scheme would relieve Plaintiff from IRS' ongoing threat to continue falsifying its records systems, and to continue using them to damage him.

88.   Plaintiff has standing based upon the allegations that (a.) he has suffered, and is suffering ongoing injuries directly resulting from the scheme,[15] that (b.) future similar injury may reasonably be inferred due to IRS' continuing use of the ASFR scheme, and that (c.) an order enjoining IRS' unlawful acts of making presumption without lawful authority, falsifying its records, and using falsified records (whether in conjunction with the DoJ or separately) would provide Plaintiff redress for, and relief from, the ongoing violation of Plaintiff's rights.

89.   Resolution of this case in Plaintiff's favor will have zero arguable impact on any authorized pre-assessment, assessment or collection activity of the IRS.  Neither the act of making fraudulent presumptions, nor the criminal acts of falsifying federal records and using such records (in conjunction with the DoJ) to defraud United States Courts and damage victims are assessment or collection activities shielded by the Anti-Injunction Act.[16]  IRS will remain free at the conclusion of this suit to perform **all** substitutes for return, assessment or collection activity authorized by law.

---

upon district court review of even legitimate assessment or collection actions.  The twin prongs of that exception apply with obvious force to this cause, especially since the Government cannot 'win' any case involving Plaintiff using IRS' falsified IMF records.

[15]  Those injuries include a.)  IRS convinced the company Plaintiff contracted with in 2009-2011 to convert to IRS' use approximately $45K in commissions due him, despite the fact no actual levy or court order compelled the conversion; b.) The company fired Plaintiff, and he has been unable to secure work in the specialized career field in which he excels due to the still-unresolved issues created by the IMF record falsification program; c.) IRS maintains fraudulent liens in two Texas counties against Plaintiff based on its falsified IMF records concerning Plaintiff; d.) IRS continues to harass Plaintiff by filing fraudulent liens and sending via United State mails documents based on its falsified records in ongoing attempt to secure Plaintiff's property for IRS use; and e.) IRS' maintenance and use of falsified records concerning Plaintiff is an ongoing violation of his due process right and the Privacy Act.

[16]  The policy behind the Act is "to protect the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference" from courts. The Act shields only "assessment" and "collection" activities from judicial review, not criminal acts.

**Causes of Action**

**First Cause of Action**
Violation of 5 USC 552(a)

90.    Plaintiff incorporates by reference the allegations in Paragraphs 1-89 above.

91.    5 USC §§552(g)(1)(C), 552(g)(1)(D) and 552(A)(g)(5) mandates that IRS  maintain accurate records, and when failure to do so adversely effects victims, the agency is liable to suit.

92.    The Commissioner created and uses both an unlawful presumption that a zero return was filed by Plaintiff, and an "automated" record-falsification program to circumvent the exercise by him, a United States citizen, of his Fifth Amendment right.  IRS creates falsified 'self-authenticating" certifications for deliberate use by the complicit DoJ in courts. The record fraud portion of the scheme violates 5 USC §552.

93.    IRS used the scheme to deprive Plaintiff of property and his livelihood in 2011, has threatened in February 2014 to continue using falsified records to damage plaintiff, and it's likely IRS will continue violating the law indefinitely into the future (facilitated by the complicit DoJ), as such violations have been its usual and customary response to Plaintiff's exercise of his protected Fifth Amendment right.

**Second Cause of Action**
Violation of Plaintiff's Fifth Amendment Procedural and Substantive Due Process Right

94.    Plaintiff incorporates by reference the allegations in Paragraphs 1-93 above.

95.    IRS unlawfully circumvents exercise by Plaintiff of his Fifth Amendment right to not be compelled to provide evidence which might be used against him by the acts of (A.) unlawfully presuming Plaintiff filed a "zero return" pursuant to an unlawful internal IRS Regulation, (B.) by falsifying records and certifications pursuant to the ASFR program, by (C.) using falsified records to arrogate to IRS Plaintiff's property, and by (D.) colluding with the DoJ to create for presentation to United States courts falsified certificates to conceal falsified IRS underlying records. Such acts violate Plaintiff's right to substantive and procedural due process of law.

**Third Cause of Action**
Violation of Plaintiff's Fifth Amendment Procedural Due Process Right

96.    Plaintiff incorporates by reference the allegations in Paragraphs 1-95 above.

97.    No person...shall be deprived of life, liberty or property without due process of law. Procedural due process requires the right to know opposing evidence and the right to cross-examine adverse witnesses. Yet the Commissioner created a fraudulent presumption, falsifies and encrypts his records concerning Plaintiff, then creates "self-authenticating certificates" to assist the DoJ to conceal the scheme while preventing Plaintiff from cross-examining IRS-employees directly participating in the ASFR fraud. Such scheme violates Plaintiff's procedural due process right.

**PRAYER FOR RELIEF**[17]

Good cause having been shown, Plaintiff respectfully requests the Court provide this relief:

98.   Enjoin IRS from presuming, in any case involving 1040 income taxes, that a zero amount due was shown on an imaginary return pursuant to any regulation, including §301.6211;

99.   Enjoin the Commissioner, his representatives, agents, employees, attorneys, those persons in active concert or participation with him, from directly or indirectly:

a.   Falsifying/manipulating in the future **any computer system of records** such as the IMF, NMF, AIMS, BMF, CADE2, (for examples), which might be or become associated with Plaintiff, by using procedure associated with requests to IRS to perform a substitute for return at the request of a victim, when no such election was made, which precise act the Commissioner's employees committed, resulting in damage to Plaintiff;

b.   Falsifying/manipulating in the future **any computer system of records** to show IRS supposedly filed a substitute for return on a certain date when no such substitute for return was actually prepared on that date, which precise act IRS committed, resulting in damage to Plaintiff;

c.   Making or inferring in **any single or series of "certifications"** that might reasonably be, or become associated with Plaintiff, the false claims that:
   1)   the source of authority to execute a Substitute for Return for those failing to file an individual income tax return is supposedly 6020(b), or Treasury Delegation Order 182 (or its successors); or that
   2)   a Substitute For Return was supposedly prepared on a date when it was not, which precise act the Commissioner performed, resulting in damage to Plaintiff;

d.   Creating certifications to prevent IRS employees or expert witnesses from being cross-examined regarding any system of IRS records, any individual income tax return, or any issue related thereto, which precise act the Commissioner committed resulting in damage to Plaintiff;

e.   **Knowingly using any falsified system of records** which might be or might reasonably become associated with Plaintiff, **for any purpose whatsoever**, which precise act the Commissioner committed, resulting in damage to Plaintiff;

---

[17]  Please note Plaintiff has requested relief which **will** impact him, but is not asking for amendment of any particular falsified record, or to enjoin any lawful information-gathering, assessment or collection of taxes such as removing liens, levies, etc. A U.S. District Court has inherent jurisdiction to enjoin the core acts of which complaint is made, since the Agency not only to damages individual such as Plaintiff, but defrauds United States courts. **Nothing can deprive this Court of its inherent power to stop a government scheme to subvert the judicial process.**

100.   Compel the Commissioner to publicly identify the precise number of citizens victimized either by court actions involving the DoJ or by non-judicial collection activities prosecuted while based on records falsified by the ASFR scheme since its inception in October 1986;

101.   Compel the Commissioner to identify by name and by date when the highest ranking IRS attorney approved extending the module-opening procedure associated with §6014 for use to initiate the "Automated Substitute for Return" record falsification program;

102.   Compel the Commissioner to identify by name and by date when the highest ranking IRS attorney approved extending the lawful authority to execute substitute returns in employment, excise and partnership tax cases to execution of substitute 1040 income tax returns; and

103.   Enjoin the Attorney General of the United States, his representatives, agents, employees, attorneys, those persons in active concert or participation with him, from directly or indirectly:

    a.   Using any 'self-authenticating' document to prevent the cross-examination of IRS witnesses concerning 1.) authority of IRS to take any action, 2.) authority of any individual IRS employee to take any action, or 3.) accuracy of internal records maintained by IRS concerning individuals and the individual income tax;

    b.   Instructing United States Attorneys to conceal exculpatory evidence in IRS files concerning so-called non-filers, by using "self-authenticating" but falsified documents provided by IRS;

    c.   Falsely stating or inferring in any document submitted or to be submitted to a United States court in cases involving "income tax non-filers" that the Secretary of the Treasury delegated to the Commissioner of IRS authority to execute substitute income tax 1040 returns;

    d.   Falsely stating or inferring in any document submitted, or to be submitted to a United States Court in cases involving "income tax non-filers" the false claim, that the authority Congress delegated to the Secretary at 6020(b) extends beyond the limitation to employment, excise and partnership taxes;

104.   Compel the Attorney General to identify by name(s) of the attorney(s) who implied and suggested to United States Attorneys in §40.03 of the Criminal Tax Manual to conceal exculpatory evidence in the IMF records of the IRS by proffering "self-authenticating certifications", and the name and date the highest-ranking attorney in the DoJ approved for publication the suggestion found in §40.03 for United States Attorneys to conceal exculpatory evidence in IRS IMF records;

105.   Compel the Attorney General to identify to this Court in camera the name and date of conviction of each person who was victimized by DoJ presentation of falsified self-authenticating certifications to conceal exculpatory evidence in IRS records from defendants and courts;

106.   Compel the Attorney General to notify each such victim of the IRS/DoJ scheme to conceal exculpatory evidence in the IMF records of the IRS, and prosecute at DoJ expense *coram nobis* or *habeus corpus* motions to expunge every conviction for 'willful failure to file' resulting from DoJ use of IRS' falsified self-authenticating certifications, as suggested to United States Attorneys by the author(s) of §40.03 of the Criminal Tax Manual;

107.   Enjoin any artifice, scheme, device, sham, presumption or procedure by IRS or DoJ as part of any conspiracy to bypass the exercise by individuals of constitutionally protected rights in connection with income taxes;

108.   Order ongoing post-judgment discovery and supervision by the Court to ensure IRS and DoJ compliance with the injunctions, with summary reports thereof regularly provided to Plaintiff until every IRS and DoJ victim has been identified and expungement secured;

109.   Grant Plaintiff such other relief, including costs, as is just and equitable.

It is respectfully submitted,

/s/Michael Ellis

P.O. Box 259
Corsicana, Texas 75151

## Verification

Comes now affiant Michael Ellis, over the age of twenty-one and competent to attest to the facts set forth above and affirms that each fact related in the Complaint to which his affidavit is attached is true and correct to the very best of his knowledge and belief.

| Michael Ellis | Notary | Date 04/10/2014 |
|---|---|---|

My Commission expires:

MOSADDEQUE AHMED
Notary Public, State of Texas
My Commission Expires
May 11, 2018

## CERTIFICATE of SERVICE

This is to certify that a copy of the foregoing First Amended Complaint was served via certified United States Mail on April 10th, 2014 to

United States Attorney General
Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

Commissioner, IRS
Office of Procedure and Administration
1111 Constitution Ave. NW, Room 5503
Washington, D.C. 20224

U.S. Attorney for the District of Columbia
Civil Process Clerk
555 Fourth Street, NW
Washington, D.C. 20530

/s/ Michael Ellis