# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| MICHAEL ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-0471 (ABJ) |
| ) | |
| COMMISSIONER OF INTERNAL ) | |
| REVENUE SERVICE, ) | |
| *Office of Procedure and Administr., et al.,* ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff Michael Ellis, proceeding *pro se*, filed this case against the Commissioner of the Internal Revenue Service, the United States Attorney General, and the United States Department of Justice (collectively, "defendants"), claiming that the Internal Revenue Service ("IRS") is committing criminal fraud by falsifying the tax records of United States citizens who do not file income tax returns.  2d Am. Compl. [Dkt. # 11].  Specifically, the second amended complaint alleges that the purported fraudulent scheme violates the Privacy Act of 1974, 5 U.S.C. § 552a (2012) (Count I); plaintiff's right against self-incrimination, as guaranteed by the Fifth Amendment to the United States Constitution (Count II); and plaintiff's right to due process of law, which is also set forth in the Fifth Amendment (Count III).  *Id.* ¶¶ 90–97.  Plaintiff seeks only injunctive relief.  *Id.* ¶¶ 98–108.

Defendants moved to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the complaint does not establish that the federal government has waived its sovereign immunity and that the Anti-

Injunction Act ("AIA"), 26 U.S.C. § 7421(a) (2012), also creates a jurisdictional bar.  Defs.'
Renewed Mot. to Dismiss for Lack of Jurisdiction ("Defs.' Renewed Mot. to Dismiss") [Dkt.
# 13]; Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Defs.' Mem.")
at 4–6 [Dkt. # 6-1].[1]  Moreover, defendants asserted that the second amended complaint should
be dismissed pursuant to Rule 12(b)(6) because it failed to state a claim upon which relief may
be granted, it is barred by the doctrine of res judicata, and it is frivolous on its face.  Defs.' Mem.
at 6–11.  Plaintiff opposed that motion.  Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Opp.") [Dkt. # 18].

Based on the points and authorities set forth in the motion to dismiss and plaintiff's
opposition brief,[2] the Court finds that the AIA bars plaintiff's claims, and it also concludes that
plaintiff does not have Article III standing to bring this case.  The Court must therefore grant
defendants' motion to dismiss the second amended complaint for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1).

## BACKGROUND

### I.      Factual Background

Plaintiff Michael Ellis is a concerned United States citizen.  2d Am. Compl. ¶ 10.  He
filed this case against defendants Commissioner of the IRS, the United States Attorney General
("USAG"), and the United States Department of Justice ("DOJ") because he believes that he

---

1       Defendants incorporate the motion to dismiss the first amended complaint into their
renewed motion to dismiss the second amended complaint.  Defs.' Mem. in Supp. of Defs.'
Renewed Mot. to Dismiss for Lack of Jurisdiction at 3 [Dkt. # 13-1].  As a result, the Court will
cite to the original motion to dismiss when discussing defendants' substantive points.

2       Although it was within the Court's discretion in managing its docket to permit defendants
to file a reply to the opposition outside the time period set by the Federal Rules of Civil
Procedure, *see In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822 (D.C. Cir. 2009); *see also Berry
v. District of Columbia*, 833 F.2d 1031, 1037 n.24 (D.C. Cir. 1987), the Court notes that its
decision is in no way predicated on that document.  Moreover, to the extent that plaintiff is
concerned that it was unfair to allow the document to be filed, any purported unfairness was
remedied when the Court granted his motion to file a surreply.  *See* Sept. 10, 2014 Minute Order.

"has discovered that in cases involving those whom the [IRS] labels 'income tax non-filers', IRS," USAG, and DOJ are engaged in a criminally fraudulent scheme to circumvent the Fifth Amendment rights of Americans.  *Id.* ¶ 1.

In the second amended complaint, plaintiff lists in great detail how the alleged scheme works, starting with the generation by the IRS of a Substitute For Return ("SFR") on behalf of an individual who does not file an income tax return.[3]  *Id.* ¶¶ 18–53.  Plaintiff asserts that the creation of the SFR is unlawful because it is done without a request by or permission from the taxpayer, and in some cases, he alleges that IRS falsifies its records to show that an SFR was created when one was not.  *Id.* ¶ 29.  In either circumstance, plaintiff contends that the taxpayer's Individual Master File ("IMF"), which contains records kept by the IRS about an individual, is falsified by the inclusion of an unlawful SFR or a notation to hide the fact that an SFR was never created.  *Id.* ¶ 34.  He believes this violates the taxpayer's Fifth Amendment right against self-incrimination (Count II), *id.* ¶ 95, as well as the Privacy Act's requirement that federal agencies maintain accurate records about individuals (Count I).  *Id.* ¶¶ 91–93.

According to plaintiff, USAG and DOJ are complicit in the IRS's fraudulent scheme.  He claims that after the IRS has falsified its records, USAG and DOJ engage in the practice of creating "self-authenticating certifications" that allow DOJ to introduce fraudulent tax documents during a tax prosecution without a live witness or custodian of the records to verify their authenticity.  *Id.* ¶¶ 53, 74.  This practice violates the Due Process Clause of the Fifth Amendment, plaintiff contends, because the self-authenticating certification "prevent[s] cross-

---

3       An SFR is a document that the IRS uses to determine a non-filer's tax liability for a given year, and it may be used during a subsequent tax prosecution.  *See* 26 U.S.C. § 6020(b); *see also* Defs.' Mem. at 3.

examination of IRS experts regarding the underlying IMF fraud and imaginary SFR's [sic]"
(Count III). *Id.* ¶¶ 53, 75, 97; *see also* 2d Am. Compl. at 1 n.1.

The second amended complaint also describes how plaintiff was personally a victim of
this fraudulent scheme and the injuries that he and other taxpayers have suffered as a result of it.[4]
2d Am. Compl. ¶¶ 37–69.   Specifically, he asserts that both the IRS's SFR scheme and DOJ's
practice of self-authenticating tax records in prosecutions have harmed him and other citizens
because they result in the government obtaining tax liens and levies against taxpayers. *See, e.g.*,
*id.* ¶¶ 77, 86.  But despite that harm, plaintiff does not challenge the collection and assessment of
taxes in general; he "seeks only to terminate the commission of criminal acts of which complaint
is made and for which no authorization can ever exist." *Id.* ¶ 17.   Put differently, plaintiff
explains that "correct resolution of this suit in Plaintiff's favor would not prevent IRS from
performing **all** substitutes for return, assessment and collection activities authorized by law." *Id.*
¶ 89.  He claims that he simply seeks to stop the government from engaging in what he believes
to be criminally fraudulent conduct. *Id.* ¶ 17; *see also* Pl.'s Surreply at 4–5 [Dkt. # 24-1].

## II.   Procedural History

This is the second time that plaintiff has sought to expose what he believes are the
criminal acts of the IRS.[5]   He filed the first lawsuit on April 24, 2012, providing the Court with a
similar overview of the IRS's allegedly fraudulent SFR scheme.   *See* Compl., No. 12-cv-655
[Dkt. # 2].  Soon after the first case was filed, the Court noted that plaintiff's claims were "nearly

---

4       Two motions for joinder have been filed by Robert McNeil and Louis Ronald Depolo.
Mot. for Joinder by Robert A. McNeil [Dkt. # 17]; Mot for Joinder by Louis Ronald Depolo
[Dkt. # 19].  The Court stayed consideration of both in light of the pending motion to dismiss the
case for lack of jurisdiction.  July 10, 2014 Minute Order; July 14, 2014 Minute Order.  The
motions will be denied as moot.

5       Plaintiff proceeded *pro se* in the first lawsuit as well.

identical [to] claims in *Florance v. Commissioner Internal Revenue Service*, 1:12-cv-933-RMC, which another Court in this district [had] recently dismissed for lack of subject matter jurisdiction," and it ordered plaintiff to show cause why his "case should not be dismissed for lack of subject matter jurisdiction in light of the court's order in *Florance*."  July 17, 2012 Minute Order, No. 12-cv-655.  After considering plaintiff's response to the order, the Court dismissed plaintiff's first lawsuit *sua sponte* on the grounds that plaintiff did not have Article III standing.  Nov. 7, 2012 Order, No. 12-cv-655 [Dkt. # 11].  Plaintiff moved for reconsideration, Mot. to Amend/Correct, No. 12-cv-655 [Dkt. # 12], but the Court denied his motion.  April 15, 2013 Mem. Op. & Order, No. 12-cv-655 [Dkt. # 13], Plaintiff then filed an appeal with the D.C. Circuit, Notice of Appeal, No. 12-cv-655 [Dkt. # 15], which he later voluntarily withdrew.

On March 19, 2014, plaintiff filed the original complaint in this case against the Commissioner of the IRS, raising almost the exact same issues that he alleged in his first lawsuit. Compl. [Dkt. # 1].  Shortly thereafter, he filed the first amended complaint, 1st Am. Compl. [Dkt. # 3], which the Commissioner moved to dismiss for lack of jurisdiction, [Dkt. # 6].  The Court subsequently denied that motion as moot after it granted plaintiff's motion for leave to file the second amended complaint.  *See* June 5, 2014 Order [Dkt. # 10].  The second amended complaint added the USAG and DOJ as named defendants.  *See* 2d Am. Compl.

On June 17, 2014, defendants renewed their motion to dismiss, arguing that the Court does not have subject matter jurisdiction over the case and that the second amended complaint fails to state a claim upon which relief may be granted.  *See* Defs.' Renewed Mot. to Dismiss; Defs.' Mem.  Plaintiff responded by filing a motion for leave to file a third amended complaint. *See* Mot. for Leave to File 3d Am. Compl. [Dkt. # 16].  The Court stayed consideration of plaintiff's motion pending resolution of the motion to dismiss the second amended complaint on

jurisdictional grounds,[6] July 9, 2014 Minute Order, and plaintiff filed an opposition to the motion

to dismiss on July 10, 2014.[7]  *See* Pl.'s Opp.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must

"treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all

inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216

F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.

1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir.

2011).   Nevertheless, the Court need not accept inferences drawn by the plaintiff if those

inferences are unsupported by facts alleged in the complaint, nor must the Court accept

plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.     Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a

preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992);

*Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts

of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors*

*Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin,

---

6     In light of the Court's finding that it does not have subject matter jurisdiction over this case, *see infra* sections I.A. and I.B., it will deny plaintiff's motion for leave to file his third amended complaint.

7     Plaintiff filed two oppositions to the motion to dismiss:  one on July 10 and one on July 11.  After the Court informed plaintiff that he may only file one opposition to defendants' motion, plaintiff withdrew the opposition filed on July 11, 2014.  *See* Notice of Withdrawal of Doc. Filed on July 11, 2014 [Dkt. # 21].  As a result, the Court has read and considered only the July 10 opposition brief.

and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.     Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. P. 8(a)(2).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.*  In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

I.   **The Court must grant the motion to dismiss because the Court does not have subject matter jurisdiction over this case.**

   A.   **Plaintiff's claims are barred by the Anti-Injunction Act.**

Defendants primary argument for why the Court lacks subject matter jurisdiction over this case is premised on the Anti-Injunction Act ("AIA"), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a); *see also* Defs.' Mem. at 5–6.  Because plaintiff seeks to enjoin defendants from using SFRs and self-authenticating certifications in tax prosecutions, defendants contend that he is interfering with the assessment and collection of taxes. *See* Defs.' Mem. at 5–6.

Plaintiff objects to that characterization of the second amended complaint, and he goes to great lengths to assure the Court that a judgment in his favor will in no way impede the government's ability to collect his taxes. *See* Pl.'s Opp. at 2 ("This illusory stronghold has no merit and should be torn down as exalting fraud against truth.").  Among other things, he stresses

that "[h]e has not identified nor sought relief from any specific assessment or collection activity of the IRS authorized by Congress;" instead, the "primary purpose in filing this suit is simply to enjoin criminal acts which Treasury employees hitherto have secretly performed."[8] *Id.* at 4–5. As a result, he claims the AIA is inapposite.  The Court disagrees.

Section 7421(a) of the AIA bars claims that seek to enjoin the "prompt collection of [the United States'] lawful revenue," regardless of the plaintiff's claimed purpose for bringing the suit.  *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962); *see also Cohen v. United States*, 650 F.3d 717, 724 (D.C. Cir. 2011) ("The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund."); *We the People Found., Inc. v. United States*, 485 F.3d 140 (D.C. Cir. 2007) (finding the AIA barred a claim despite the plaintiffs framing the claim as a constitutional issue). Although the AIA does not prohibit all claims against the IRS or related to the taxation scheme, *Cohen*, 650 F.3d at 726, it does prohibit "those suits seeking to restrain the assessment or collection of taxes."  *Id.* at 724, citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 737 (1974); *see*

---

8      Plaintiff also notes that, in his proposed third amended complaint – which he considers properly filed even though the Court stayed consideration of his motion for leave to file it, Pl.'s Opp. at 2 n.3 – he "is literally seeking the Court *to compel IRS to perform assessments* it pretended to have performed, not to enjoin any assessment," and he does not seek "any protection whatsoever from the criminal use of falsified IRS records by Treasury/IRS employees." *Id.* at 4.  But the Court has not granted plaintiff leave to file his third amended complaint, and it therefore is not properly considered by this Court in resolving the motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)–(2) (explaining that a party may amend a pleading once as a matter of course and that any future attempt to file an amended pleading, such as a third amended complaint, requires either the opponent's consent or leave of court).  But even if the Court could consider the proposed amended complaint and even if the additional statements in that document were sufficient to show that the AIA does not apply, plaintiff's request that the Court compel the government to perform the very conduct he alleges to be unlawful and his abandonment of a request to enjoin the "criminal use of falsified IRS records" further demonstrates that he does not have standing to bring this case. *See infra* section I.B.

*also id.* at 726, quoting *Hibbs*, 542 U.S. at 102 (noting that "assessment" of taxes refers to "the trigger for levy and collection efforts," and "collection" is "the actual imposition of a tax against a plaintiff").  And circuit courts have adopted a broad interpretation of that prohibition, finding that "it is applicable to not only the assessment and collection of taxes, but to 'activities which are intended to or may culminate in the assessment or collection of taxes' as well."  *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983), quoting *Kemlon Prods. & Dev. Co. v. United States*, 638 F.2d 1315, 1320 (5th Cir. Mar. 1981); *see also United States v. Dema*, 544 F.2d 1373, 1376 (7th Cir. 1976).

Applying that framework here, the Court finds that plaintiff's claims are barred by the AIA.  At bottom, the goal of this action is to enjoin the IRS from creating SFRs without the permission of the taxpayer and to enjoin DOJ from using those SFRs and their self-authenticating certifications in tax prosecutions.  So plaintiff is seeking to stop the IRS from engaging in conduct that aids in the assessment and collection of taxes.[9]  It makes no difference that plaintiff couches those goals in terms of stopping a criminal fraud:  that "is a distinction without a difference.  The use of the 'created' return directly relates to the tax assessment and is certainly an activity that resulted in the imposition of the tax liability."  *Tecchio v. United States*,

_____

9       This distinguishes plaintiff's case from other cases where courts have found that the AIA does not bar the suit.  For example, in *Cohen v. United States*, the D.C. Circuit found that a class action challenging the IRS's refund procedures was not barred by the AIA because the challenged government conduct occurred after the assessment and collection of taxes was completed and therefore could not interfere with that process.  650 F.3d at 725–26.  Similarly, in *Foodservice & Lodging Institute, Inc. v. Regan*, the D.C. Circuit held that part of the plaintiff's lawsuit challenging an IRS regulation that required food and beverage establishments to report tips was not barred by the AIA because the purpose of the regulation was "to provide data useful for assessing tip [reporting] compliance" by employees, which meant that success on the claim would in no way interfere with the collection of taxes.  809 F.2d 842, 846–47 (D.C. Cir. 1987) (per curiam).  In contrast, plaintiff's success on his claims would impose a hurdle that, although likely not fatal, would at a minimum impede tax assessment and collection.

153 F. App'x 841, 843 (3d Cir. 2005) (rejecting the plaintiff's argument that the AIA did not

apply because "he was not seeking relief based on the tax assessment but on the use of a

substitute return that was created without authorization"); *see also Pollinger v. United States*,

539 F. Supp. 2d 242, 255 (D.D.C. 2008) ("Despite Plaintiff's semantics, the allegations of his

Complaint make clear that his claims of 'illegal actions' . . . are based upon the IRS' assessment

and/or collection of taxes.  Thus, insofar as Plaintiff seeks an order commanding Defendants to

'cease and desist' . . . , the relief he seeks is barred by the Anti-Injunction Act.").  As a result,

plaintiff's claims are barred by the AIA, which deprives this Court of subject matter jurisdiction

and requires dismissal of the case.[10]

## B.      Plaintiff does not have Article III standing to bring this case.

"To state a case or controversy under Article III, a plaintiff must establish standing."

*Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *see also Lujan*, 504 U.S.

at 560.  Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is

---

[10]      Plaintiff argues that, should this Court find that his claims relate to the assessment and
collection of taxation despite his many arguments to the contrary, the AIA still does not bar his
case because the *Enochs v. Williams Packing & Navigation Co.* exception to the AIA applies.
Pl.'s Opp. at 6–8.  The Court finds no merit in that argument.  The first requirement that must be
satisfied before the *Enochs* exception can apply is that, based on the facts available at the time of
the lawsuit, it must be "clear that under no circumstances could the Government ultimately
prevail" on its collection efforts.  370 U.S. at 7.  Plaintiff argues that this prong is satisfied in this
case because, "even given the most liberal view of" the facts of the case, "the Government could
not prevail against Plaintiff in any case… EVER, using Treasury's falsified IMF records." Pl.'s
Opp. at 7.  But that point is one step ahead of the analysis:  it presumes that defendants' creation
of SFRs and their use of self-authenticating certifications is in fact illegal, which has not yet been
established and seems to be contrary to both the plain language of section 6020(b), which
authorizes the Secretary of the IRS to create a tax return for "any person" who "fails to make *any*
return required by *any* internal revenue law," 26 U.S.C. § 6020(b) (emphases added), as well as
an abundance of case law that has recognized the IRS's authority to create SFRs when
individuals fail to file income tax returns.  *See, e.g., Byers v. Comm'r of Internal Revenue*, 740
F.3d 668, 671 (D.C. Cir. 2014); *Brenner v. Comm'r of Internal Revenue*, 164 F. App'x 848, 850
(11th Cir. 2006); *Moore v. Comm'r of Internal Revenue*, 722 F.2d 193, 196 (5th Cir. 1984).  As a
result, plaintiff cannot satisfy the first prong of *Enochs*, and the AIA bars his suit.

lacking, then the dispute is not a proper case or controversy under Article III, and federal courts do not have subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).

To establish constitutional standing, a plaintiff must demonstrate that (1) he has suffered an "injury-in-fact"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000).

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. When reviewing the standing question, the Court must be "careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008).

As a result, for the purposes of the standing analysis, the Court will assume that defendants are engaging in an unlawful scheme to generate (or pretend to generate) SFRs, and that DOJ is violating the constitutional rights of taxpayers by using self-authenticating certifications during tax prosecutions. Even with that assumption, the Court finds that plaintiff does not have standing.

1.   Injury-in-fact.

In order for an injury to be cognizable for purposes of conferring Article III standing, the harm must be concrete and particularized as well as either actual or imminent. *Lujan*, 504 U.S. at 560; *see also Allen v. Wright*, 468 U.S. 737, 755 (1984). In this case, plaintiff alleges that he has suffered both actual concrete and particularized injuries as well as imminent concrete and

particularized injuries.   Specifically, he recites the following alleged actual injuries he has

suffered based on defendants' past conduct:

- The "IRS convinced the company Plaintiff contracted with in 2009-2011 to convert to IRS' use approximately $45K in commissions due to him, despite the fact no actual levy or court order compelled the conversion," 2d Am. Compl. at 13 n.16;

- "The company fired Plaintiff, and he has been unable to secure work in the specialized career field in which he excels due to the still-unresolved issues created by the IMF record falsification program," *id.*; *see also* 2d Am. Compl. ¶¶ 60–61;

- The "IRS maintains fraudulent liens in two Texas counties against Plaintiff based on its falsified IMF records concerning Plaintiff," 2d Am. Compl. at 13 n.16; *see also* 2d Am. Compl. ¶¶ 13, 56, 62 (alleging that the IRS used the fraudulent documents to file liens thereby injuring plaintiff and his reputation); and

- The "IRS continues to harass Plaintiff by filing fraudulent liens and sending via United State mails documents based on its falsified records in ongoing attempt to secure Plaintiff's property for IRS use."  2d Am. Compl. at 13 n.16; *see also* 2d Am. Compl. ¶ 65.

He then avers that he is likely to suffer future injuries of the same type because defendants renew

their fraudulent scheme annually to injure those who do not file income tax returns, *see* 2d Am.

Compl. ¶¶ 7, 11, 14, 18, 69, 88, 93; *see also* 2d Am. Compl. at 2 n.2, and plaintiff will never

waive what he believes to be his Fifth Amendment right to not file his taxes.  2d Am. Compl.

¶¶ 7, 14, 88; *see also* 2d Am. Compl. at 6 n.8.  And finally, in his opposition, plaintiff explains

that he has suffered from broad societal harm that all citizens experience when their government

engages in allegedly fraudulent behavior:  the "primary purpose in filing this suit is simply to

enjoin criminal acts which Treasury employees hitherto have secretly performed;" as a result,

"[t]here is no monetary value [he] can place on the two decades he lost and suffering caused to

his family, since he was forced to divert his life's energy to uncovering and stopping the criminal

acts secretly performed inside the Treasury's IRS Bureau."  Pl.'s Opp. at 5, 7.

Neither plaintiff's past injuries nor the general harm he shares with all citizens can serve as cognizable injuries-in-fact in this case.  Plaintiff expressly disavows that this case is meant to redress his past injuries, and the second amended complaint requests only forward-looking injunctive relief.  2d Am. Compl. ¶¶ 17, 89, 98–108.  As a result, past injuries cannot serve as a basis on which he has standing to bring the claims that are meant to stop future injuries.

Moreover, the Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy."  *Lujan*, 504 U.S. at 573–74; *see also Fairchild v. Hughes*, 258 U.S. 126, 129–30 (1922) ("Plaintiff has [asserted] only the right, possessed by every citizen, to require that the Government be administered according to law and that the public moneys be not wasted. Obviously this general right does not entitle a private citizen to institute in the federal courts a suit . . . .").  A "party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally."  *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975) (noting that a plaintiff "must allege specific concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention").  Thus, neither plaintiff's amorphous injury resulting from his decision to focus his efforts on uncovering defendants' alleged fraud nor the general dissatisfaction that all citizens experience when their government behaves in an allegedly corrupt manner provide a basis for standing.

14

But plaintiff's future alleged injuries – such as additional tax liens and garnishments – come closer to satisfying his burden to establish an injury-in-fact.[11]  The harm from tax liability is concrete and particularized, and plaintiff alleges that those injuries are imminent when he repeatedly avows that he will never voluntarily file an income tax return and claims that the government frequently creates SFRs on behalf of such non-filers.[12]  2d Am. Compl. ¶¶ 4, 7, 13–14, 88; 2d Am. Compl. at 6 n.8; *see also Sierra Club v. Jewell*, -- F.3d -- , No. 12-5383, 2014 WL 4193636, at *4 (D.C. Cir. Aug. 26, 2014).  The Court will therefore go on to determine whether these future injuries satisfy the second standing requirement:  causation.

2. Causation.

To satisfy the causation requirement, the plaintiff must allege an "injury that is 'fairly traceable to the defendant's allegedly unlawful conduct.'"  *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 189 (D.C. Cir. 2012) (alteration in original), quoting *Allen*, 468 U.S. at 751; *see also Freedom Republicans, Inc. v. FEC*, 13 F.3d 412, 418 (D.C. Cir. 1994) (stating that "fair

---

11     Plaintiff also alleged that a continuation of the government's fraudulent conduct endangers his constitutional right to be free from self-incrimination and to due process of the law.  2d Am. Compl. ¶¶ 95, 97.  But he has not suffered a cognizable injury related to either claim for purposes of standing.  With respect to the self-incrimination clause, plaintiff has offered no facts from which the Court can conclude that any action of the government has compelled him to provide incriminating evidence, *see* 2d Am. Compl., and as explained below, there is no constitutional right to not file an income tax return.  *See infra* note 13.  Moreover, plaintiff has not shown that the injury to his due process rights – assuming he is able to make one out – is imminent.  *Sierra Club v. Jewell*, -- F.3d -- , No. 12-5383, 2014 WL 4193636, at *4 (D.C. Cir. Aug. 26, 2014), quoting *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (explaining that to establish that an injury is imminent, "[a] plaintiff must show a 'substantial probability of injury'").  Just because DOJ has used self-authenticating certifications before and it may use them in the future does not mean that there is a substantial probability that they will use one against plaintiff, even if he continues to refuse to file a tax return.

12     The fact that plaintiffs' only cognizable injuries for purposes of standing relate to his future tax liability confirms that this Court does not have subject matter jurisdiction over this case.  Either plaintiff seeks to prevent those injuries, which runs afoul of the AIA, *see supra* section I.A., or he does not try to block attachment of future liability, which prevents the Court from finding that his injuries are redressable – a necessary predicate to standing.  *See infra* section I.B.3.

traceability turns on the causal nexus between the agency action and the asserted injury"). This requires the plaintiff to show that there is "a substantial probability that the substantive agency action" that plaintiff challenges "created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 669 (D.C. Cir. 1996).

The Court has doubts that plaintiff can satisfy the causation requirement in this case. The conduct he complains about is defendants' alleged falsification of its record systems through the creation of unrequested SFRs and the subsequent use of those SFRs and their accompanying self-authenticating certifications in tax proceedings. *See* 2d Am. Compl. ¶ 77 ("For example, in the teeth of Plaintiff's explicit allegations [is] that IRS annually falsifies master file records . . . ."); *see also id.* ¶¶ 5–7. According to plaintiff, his alleged future injury is the tax liability that he will owe as a result of the government's reliance upon allegedly fraudulent documents. Thus, in a sense, the injury seems fairly traceable to defendants' challenged conduct.

But it is well-settled in this jurisdiction that self-inflicted injuries – injuries that are substantially caused by the plaintiff's own conduct – sever the causal nexus needed to establish standing. *See Grocery Mfrs. Ass'n*, 693 F.3d at 177; *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989). There is no question that plaintiff would be responsible for the tax deficiencies that comprise his asserted injury regardless of whether the defendants used an SFR or certification in his case. Plaintiff has consistently maintained that he has no intention of filing an income tax return, which means he is taking a voluntary step to create the deficiencies that lead inexorably to his complained of injuries. It is therefore hard to conclude that his future injuries are not self-inflicted, which would eliminate causation. *See Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("[E]ven if self-

inflicted harm qualified as an injury it would not be fairly traceable to the defendant's challenged conduct."); *Petro-Chem*, 866 F.2d at 434 (alteration in original), quoting 13 Charles Alan Wright et al., *Federal Practice and Procedure* § 3531.5 (2d ed. 1984) (finding no standing because the alleged injury was "'so completely due to the [complainant's] own fault as to break the causal chain'").

But it is true that it has been observed that all injuries are in some sense self-inflicted, *Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 935 (D.C. Cir. 1989) (Wald, J. dissenting) (noting that, because all injuries are in some sense self-inflicted, this doctrine "should be read quite narrowly" for standing purposes), so the Court will also consider whether plaintiff has satisfied the last standing requirement:  redressability.

    3.   <u>Redressability.</u>

To satisfy the redressability requirement, a plaintiff must demonstrate that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561.  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  This is where the second amended complaint falls short.

As noted above, the majority of plaintiff's asserted injuries involve past harms, such as the imposition of tax liens, the taking of his commission, his loss of employment, and his inability to secure a new job.  2d Am. Compl. at 13 n.16.  For the same reason these injuries cannot serve as an injury-in-fact for purposes of the standing inquiry, they also fail under the redressability prong:  plaintiff seeks only forward looking relief in the form of injunctions, which do not remedy past harms.

Moreover, to the extent that plaintiff seeks to prevent future tax liens or garnishments, those injuries are not redressed by the injunctions he has requested.  So long as plaintiff continues to refuse to file his tax returns, defendants may institute deficiency proceedings against him, even without generating an SFR or using a self-authenticating certification.  *See Schiff v. United States*, 919 F.2d 830, 832 (2d Cir. 1990) ("There is no requirement that the IRS complete a substitute return."); *see also Brenner v. Comm'r of Internal Revenue*, 164 F. App'x 848, 850 (11th Cir. 2006) ("As the tax court observed correctly, section 6020(b) allows preparation of a substitute return for a non-filing taxpayer; but a section 6211(a) deficiency can be determined in the absence of a substitute return."); *United States v. Stafford*, 983 F.2d 25, 27 (5th Cir. 1993) (same).  In fact, plaintiff seemed to recognize that his future injuries will not be redressed by the relief he requests when he tried to explain why the AIA is not applicable to his case:  "Resolution of this case in Plaintiff's favor will have zero arguable impact on any authorized pre-assessment, assessment or collection activity of the of the IRS."  2d Am. Compl. ¶ 89.

Finally, it is not enough that a favorable outcome in this case will give plaintiff the peace of mind of knowing that he has stopped the government's criminal activity:

> By the mere bringing of his suit, every plaintiff demonstrates his belief that a favorable judgment will make him happier.  But although a suitor may derive great comfort and joy from the fact that the United States Treasury is not cheated, that a wrongdoer gets his just deserts, or that the Nation's laws are faithfully enforced, that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury.

*Steel Co.*, 523 U.S. at 107, *citing Allen*, 468 U.S. at 754–55; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982).  As a result, plaintiff's injuries are not redressable, which means that he does not have Article III standing.  The Court will therefore dismiss the case for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated above, the Court finds that the claims plaintiff raises are barred by the AIA and that plaintiff does not have Article III standing to bring this case.  The Court must therefore grant the motion to dismiss the second amended complaint pursuant to Rule 12(b)(1) because it does not have subject matter jurisdiction.[13]  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  September 16, 2014

---

[13]    Because the Court does not have jurisdiction over this case, it will not go on to consider defendants' merits-based arguments in support of the motion to dismiss.  The Court does note, though, that plaintiff's claims are also problematic on the merits.  For example, the sections of the Privacy Act underlying plaintiff's claims do not provide for equitable relief.  *See Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) ("The [Privacy] Act's subsection on civil remedies authorizes entry of injunctive relief in only two specific situations."); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) ("We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs . . . .").  And the Supreme Court has consistently rejected the contention that an individual has a right under the Fifth Amendment self-incrimination clause to not file his or her taxes.  *United States v. Sullivan*, 274 U.S. 259, 263 (1927) (noting that although an individual may have a right to withhold certain incriminating information on tax forms, one can "not on that account refuse to make any return at all"); *see also Garner v. United States*, 424 U.S. 648, 661 (1976) ("The requirement that [income tax] returns be completed and filed simply does not involve the compulsion to incriminate . . . .").